S. Noble Foster *vs.* William Fitch and others.

The charter of the New Haven & Derby Railroad Company contained a provision that if the road should not be constructed and put in operation within five years, the charter should become void Six days before the expiration of the five years, the road being but partly constructed, the legislature passed an act authorizing the company to issue bonds to a large amount upon semi-annual interest, to be guaranteed by the city of New Haven, and to be secured by a mortgage to the city of the property and franchises of the company. Held that the time for the completion of the road was impliedly extended and the charter continued in force for an indefinite time by the act in question.

Petition for an injunction against the mayor of the city of New Haven, to prevent the execution by him of guarantees in the name of the city of certain bonds of the New Haven and Derby Railroad Company ; brought to the Superior Court in New Haven County.

The act of incorporation of the railroad company, which was approved and took effect on the 9th day of July, 1864, contained the following provision:

" Sec. 9th. If said corporation shall not expend the sum of $100,000 upon said railroad within three years from the passage of this act, or if they shall not construct said railroad and put the same in operation within five years from the passage of this act, then this act shall be null and void."

On the 25th day of January, 1869, the city of New Haven voted to authorize the mayor of the city to execute in behalf of the city a guaranty of the bonds of the railroad company, to an amount not exceeding $225,000, to be secured by a first mortgage of certain real estate of the company in the city of New Haven and by a second mortgage on all the property and franchises of the company.

On the 3d day of July, 1864, the General Assembly passed an act, the first section of which confirmed and validated the vote of the city of January 25th, 1869, and the remainder of which was as follows :

" Sec. 2. In addition to the bonds which may lawfully be issued by the New Haven and Derby Railroad Company under the first mortgage heretofore executed by said company

and on file in the office of the Secretary of State, the said company is hereby authorized to issue its bonds, to be guaranteed as aforesaid, to an amount not exceeding two hundred and twenty-five thousand dollars; which bonds may be at any rate of interest not exceeding seven per cent. per annum, payable semi-annually, and ·may be executed with or without the corporate seal of said company, and with or without coupons, or certificates of interest, due at the end of every six months attached thereto, and shall be signed by the president and countersigned by the treasurer of said company, and shall be registered in the office of the comptroller of public accounts; and said company is hereby authorized to execute in favor of the mayor, aldermen, common council and freemen of the city of New Haven the agreement of indemnity and the mortgages contemplated and provided for in and by said votes.

" Sec. 3. Said guaranty may be made upon each bond in the following form, substantially, to wit: The mayor, aldermen, common council, and freemen of the city of New Haven hereby guarantee to the holder of this bond, payment of the same, and of the interest thereon, according to its tenor: which guaranty, signed by the mayor of said city, or by any other person who shall be appointed for the purpose by the court of common council, with or without the corporate seal of said city, shall have the effect of a sealed instrument, and shall be obligatory upon the mayor, aldermen, common council, and freemen of the city of New Haven, in favor of every holder of such bond, according to the tenor of said guaranty. The agreement of indemnity, to be given as aforesaid, by said railroad company, may be given at any time prior to the execution of such guaranty upon said bonds, and shall operate as an agreement to indemnify the mayor, aldermen, common council, and freemen of the city of New Haven against all loss which may accrue to the mayor, aldermen, common council, and freemen of the city of New Haven by reason of such guaranty upon said bonds, thereafter to be so guaranteed; and said agreement shall be delivered to the mayor or clerk of said city and shall thereupon be obligatory upon said

railroad company according to its tenor. The mortgages which are to be given to secure said agreement of indemnity may be given by separate deeds or instruments, or may be embraced within one deed or instrument, and shall be delivered to the mayor or to the clerk of said city prior to, or at the time of, the execution of said guaranty, and from the time of such delivery shall be and remain a full and valid mortgage lien upon all the property, franchises and estate thereby mortgaged, to the full amount of the bonds so to be guaranteed, and of the interest thereon, and to the full amount and extent of said agreement of indemnity, and shall stand as a security in full therefor, so that all of said bonds which shall then or thereafter be guaranteed, as aforesaid, to the full amount aforesaid, and the liability of the mayor, aldermen, common council, and freemen of the city of New Haven thereon, and the said agreement of indemnity, shall be covered and protected thereby. Said mortgage deed or deeds shall be recorded in the land records of the town of New Haven, and such record thereof, shall be sufficient for all purposes.

" Sec. 4. This act shall take effect from its passage."

At the time of the passage of this act the road was but partially constructed, and could not possibly be completed within the five years limited by the charter, which expired on the 9th day of July, 1869, six days after the passage of the act.

The petition set up the foregoing facts, and alleged that the respondent Fitch, as mayor of the city, was about to execute guarantees of the bonds of the road under the authority of the act, and prayed for an injunction against his doing so. The city of New Haven was also made a respondent. The respondents demurred to the petition, and the questions arising on the demurrer were reserved for the advice of this court.

*H. B. Harrison*, in support of the demurrer.

*Doolittle*, contra.

PARK, J.   We are all satisfied that the act of July 3d, 1869, continued the charter of the railroad company for an indefinite period of time, notwithstanding the provision in the ninth section of their charter, requiring the company to construct their road within a specified time, or the charter should become void; and notwithstanding that the company failed to comply with that requirement.

What construction should be given to that provision of the charter it is unnecessary to determine; therefore we leave it without consideration.

The time limited for the construction of the road was within six days of expiring when the act of July 3d was passed, and a large amount of work remained to be done on the road; so much that it was impossible to finish it within the time prescribed.

The work was a public one.   The state had authorized the company to construct the road for public use; and the state must be regarded as having knowledge of the progress of the work, and what remained to be done when the act was passed, and the time limited for its completion.   The state also must have known that the object of giving the bonds which the city of New Haven proposed to guaranty, was to raise money to complete the road.

The amount authorized to be raised was two hundred and twenty-five thousand dollars.

A much longer time than six days would ordinarily be required to raise so large an amount of money, to say nothing of the time necessary to prepare the bonds and execute the instruments required to be given.

The delivery of the bonds to the company after the guaranty of the city was indorsed upon them, was required by the vote of the city to be done from time to time, after the company had sold all their first mortgage bonds that remained undisposed of, and the proceeds had been expended in the construction of the road.

The act required that the interest of the bonds should be made payable semi-annually, and the guaranty of the city

secured by mortgage; thereby showing that the bonds were designed to run a considerable period of time.

Can it be supposed that these provisions, rendering a much longer period of time than six days necessary for their consummation, were intended never to be realized—never to have any practical effect?

If the claim of the petitioner is correct, that the charter of the company expired on the 9th day of July, then the legislature was engaged in a work of folly in legislating for a company destined to extinction in six days thereafter, without the possibility of enjoying any of the benefits attempted to be conferred upon them.

Of what possible advantage to this company were these provisions, if this claim is true, and what object could the legislature have had in view, in passing them?

Suppose the bonds could have been issued and the money obtained upon them within the six days, what condition would the city have been in, guaranteeing the bonds of a company defunct as soon as the guaranty was given and the money obtained?

The legislature could not have intended such a result. When they authorized the railroad company as a corporation to issue bonds with interest at seven per cent. per annum, payable semi-annually, they authorized the company as a corporation to pay them at maturity according to their tenor. The authority to issue such bonds as a corporation necessarily involves authority to pay them at maturity as a corporation. The authority to pay them as a corporation necessarily involves authority to exist as a corporation at the time of payment.

We think it is clear that the statute of July 3d by necessary implication continued the charter of the company in full vigor for an indefinite period of time. It makes no allusion to the ninth section of the charter. It makes no allusion to the non-completion of the road, a fact which was notorious. It contemplates the existence of the company for an indefinite period of time, and in absolute terms authorizes them as a

corporation to perform a series of acts that in the ordinary course of events would require years for their accomplishment.

We think it is clear that the act repeals the ninth section of the charter by necessary implication. That section had performed all the good it could accomplish. The road was far advanced in its completion. It was for the benefit of the state that it should be completed. No good could result from its non-completion, and the act in question intended that it should be completed.

We therefore advise the Superior Court that the petition is insufficient in the law.

In this opinion CARPENTER, J., concurred; BUTLER, J., did not sit; HINMAN, C. J., concurred in the decision, but died before the opinion was prepared.